# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES DAVID ROSS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2568** |
| **DARRELL VANNOY, WARDEN, LSP** | **SECTION: "R"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, James David Ross, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On August 25, 2010, he was convicted of simple robbery, possession of stolen property, and attempted false personation of a peace officer.[1] On November 5, 2010, he was found to be a fourth offender and was sentenced as such on each conviction to a concurrent term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On November 9, 2011, the Louisiana First Circuit Court of Appeal affirmed his

---

[1] State Rec., Vol. 2 of 9, trial transcript, p. 249; State Rec., Vol. 1 of 9, minute entry dated August 25, 2010; State Rec., Vol. 1 of 9, jury verdict forms.

[2] State Rec., Vol. 2 of 9, transcript of November 5, 2010; State Rec., Vol. 1 of 9, minute entry dated November 5, 2010.

convictions, his habitual offender adjudication, and his sentence on the simple robbery conviction; however, the court vacated his sentences on the two remaining convictions and remanded the matter for resentencing.[3]  On April 13, 2012, the Louisiana Supreme Court denied his related writ application.[4]

In the interim, on February 15, 2012, the state district court resentenced petitioner on each of the two remanded convictions to a concurrent term of life imprisonment.[5]  Petitioner again appealed.  On February 19, 2013, the Louisiana First Circuit Court of Appeal affirmed those sentences,[6] and the Louisiana Supreme Court then denied his related writ application on October 11, 2013.[7]

On September 9, 2014, petitioner filed an application for post-conviction relief with the state district court.[8]  That application was denied on October 21, 2014.[9]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on February 23, 2015,[10] and by the Louisiana Supreme Court on February 26, 2016.[11]

On March 28, 2016, petitioner filed the instant federal application seeking habeas corpus relief.[12]  The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts; however, the state argues that the application should be dismissed on the merits.[13]  Petitioner filed a reply to the state's response.[14]

---

[3] State v. Ross, No. 2011 KA 0791, 2011 WL 5429584 (La. App. 1st Cir. Nov. 9, 2011); State Rec., Vol. 3 of 9.
[4] State v. Ross, 85 So.3d 1244 (La. 2012); State Rec., Vol. 4 of 9.
[5] State Rec., Vol. 5 of 9, transcript of February 15, 2012; State Rec., Vol. 5 of 9, minute entry of February 15, 2012.
[6] State v. Ross, No. 2012 KA 1023, 2013 WL 616892 (La. App. 1st Cir. Feb. 19, 2013); State Rec., Vol. 6 of 9.
[7] State v. Ross, 123 So.3d 1215 (La. 2013); State Rec., Vol. 6 of 9.
[8] State Rec., Vol. 7 of 9.
[9] State Rec., Vol. 7 of 9, Judgment with Reasons dated October 21, 2014.
[10] State v. Ross, No. 2014 KW 1742 (La. App. 1st Cir. Feb. 23, 2015); State Rec., Vol. 7 of 9.
[11] State ex rel. Ross v. State, 184 So.3d 1273 (La. 2016); State Rec., Vol. 9 of 9.
[12] Rec. Doc. 3.
[13] Rec. Doc. 10.
[14] Rec. Doc. 11.

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>     If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## **Facts**

In the first direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> On or about December 26, 2007, as a group of friends, Brian McManus (the driver), Richard Orser, and a third individual only identified as Michael, entered the parking lot of Texas Roadhouse Restaurant in Slidell, Louisiana to have dinner, a white Ford F-150 pulled in front of and blocked McManus's vehicle. The white strobe lights of the Ford were activated.[FN2]  Orser noticed the approaching vehicle and removed his wallet from his back pocket and threw it under the seat of the vehicle in which he was riding.  Two males exited the blocking vehicle.  One of the males, later identified as defendant, exited from the passenger side and approached the group of friends as they exited McManus's blocked vehicle.

> > [FN2]  Coincidentally, McManus's vehicle was also a white Ford F-150; however it did not have strobe lights.

> Defendant stated that he was an undercover police officer and accused Orser of concealing drugs under the seat.  Defendant grabbed Orser and told him not to make any sudden moves, pushed him against McManus's vehicle, frisked him, and instructed him to retrieve his wallet and empty its contents and his pockets.  Orser complied with defendant's orders.  Defendant also instructed McManus to walk to the front of his vehicle and place the contents of his pockets on the hood and McManus complied.  After defendant and the other individual left, McManus noticed that his wallet had been taken from the hood of his vehicle.  McManus's wallet contained approximately one hundred fifty dollars, gifts cards, one or more credit cards, and a debit card.

> On December 28, 2007, McManus and Orser identified defendant in a photographic lineup and again at trial.[FN3]  The Slidell Police Department determined that the white Ford F-150 used in the commission of the instant offenses was stolen from the Walker County Commission.  The police recovered the truck while it was in the possession of Brandi Taylor and Daniel Lawson in or near Jasper, Alabama.  Defendant was located in the Jasper, Alabama area and transported back to Louisiana.

> > [FN3]  The third occupant of McManus's vehicle did not testify at the trial.[15]

---

[15] State v. Ross, No. 2011 KA 0791, 2011 WL 5429584, at *1 (La. App. 1st Cir. Nov. 9, 2011); State Rec., Vol. 3 of 9.

**Petitioner's Claims**

Petitioner claims that his counsel was ineffective in various respects.  The state district court denied his claims, holding:

> The defendant filed an application for post-conviction relief on September 24, 2014.  He sets forth a claim that his conviction is defective because he alleges that his counsel did not adequately investigate the facts of the allegations of the prosecution and did not present evidence which the defendant asserts would have cast doubt on the credibility of the persons whom the defendant maintains were the culprits of the crime.  This Court has reviewed the application and finds the arguments of the defendant to be specious and untenable.  The Court notes that this conviction and sentencing were reviewed and upheld on appeal.  [See:  2011-KA-0791, 1st Cir; 2011-KO-2731 S Ct filed 12/08/2011, denied 4/13/2012; 2013-KO-0598, denied 10/11/2013][16]

The Louisiana First Circuit Court of Appeal then denied his related writ application without assigning additional reasons.[17]  The Louisiana Supreme Court thereafter likewise denied relief, stating:  "Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[18]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were

---

[16] State Rec., Vol. 7 of 9, Judgment with Reasons dated October 21, 2014.

[17] State v. Ross, No. 2014 KW 1742 (La. App. 1st Cir. Feb. 23, 2015); State Rec., Vol. 7 of 9.

[18] State *ex rel.* Ross v. State, 184 So.3d 1273 (La. 2016); State Rec., Vol. 9 of 9.

adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

    A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

    Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

    Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Here, in the last reasoned state court opinion addressing petitioner's claims, the Louisiana Supreme Court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims:  Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the United States Supreme Court established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  Id. at 697.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of

counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

In his first claim, petitioner alleges that his counsel was ineffective for failing "to investigate, interview and call witnesses to aid his defense theory at trial."[19]  In support of that claim, he alleges that he instructed his counsel "to go and talk with the co-defendants, Daniel Lawson and Brandi Taylor, because Mr. Lawson and Ms. Taylor were willing to testify that Mr. Ross did not know that the truck was stolen nor was he aware of Lawson taking the victim's wallet."[20]  He also alleges that "[c]ounsel should have went to interview the victims of the crime as well, not only to get an idea of what they would testify to, but a general understanding of Mr. Ross's defense theory of the case."[21]

---

[19] Rec. Doc. 3, p. 23.
[20] Rec. Doc. 3, p. 27.
[21] Rec. Doc. 3, p. 29.

The critical flaw with respect to the foregoing claim is that petitioner's assertions were unsupported by even a scintilla of evidence. He offered no actual evidence that the counsel did not in fact interview the co-defendants and the victims. In fact, he offered no evidence whatsoever concerning what preparation or investigative steps his counsel undertook or failed to undertake; rather, he merely suggested that counsel's preparation and investigation, whatever it entailed, was inadequate. It is clear that such conclusory allegations alone do not suffice to meet a petitioner's burden of proof to establish that his counsel performed deficiently. See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

Further, even if petitioner had shown that counsel's preparation and investigation were deficient, that would be only half the battle. To be entitled to relief, he must *also* prove that prejudice *actually resulted* from the purportedly inadequate preparation or investigation. To make that showing, he must point to evidence establishing that better preparation or more thorough investigation would have actually benefited the defense, for example by showing that exculpatory evidence existed and would have been revealed through additional efforts. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Here, he utterly failed in that regard; rather, his assertions were entirely speculative and unsupported by any evidence at all. Again, a petitioner cannot rely on such bare speculation to meet his burden of proof. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was ineffective for failing to call his co-defendants or other witnesses to testify at trial. As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In the instant case, petitioner presented no evidence, such as affidavits from uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. Therefore, again, he obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled

witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").[22]

In his second claim, petitioner alleges that his counsel was ineffective for failing "to inform petitioner of a plea offer by the prosecution."[23] With respect to such claims, the United States Supreme Court has clearly held the Sixth Amendment's right to counsel is "a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). The Supreme Court has further held that such claims must be analyzed under the two-prong analysis established in Strickland. See, e.g., Lafler, 132 S. Ct. at 1384; see also Missouri v. Frye, 132 S. Ct. 1399 (2012).

Where, as here, a petitioner claims that he was not properly advised of a favorable plea offer (i.e. an offer which would have allowed him to plead guilty to a lesser charge or to receive a less onerous sentence), he must make the following showings in order to prevail on Strickland's prejudice prong. First, he must demonstrate a reasonable probability he would have accepted the

---

[22] In the discussion of his first claim, petitioner also complains that his counsel withdrew previously filed defense motions to suppress evidence and confessions. However, his complaint does not appear to be that the motions should have been pursued because they had merit; rather, it appears to be simply that a hearing on the motions would have "allowed counsel the opportunity to question the victims and see how they might testify before they took the stand at trial." Rec. Doc. 3, pp. 27 and 29. Even if that was true, counsel's decision to withdraw meritless motions was commendable, not condemnable. Acceptable avenues exist for investigating a client's case – but wasting a court's time by filing and requiring hearings on meritless motions is not among them. Because petitioner has not argued, much less established, that there was any valid legal basis for the suppression motions, this Court simply cannot say that counsel was ineffective for withdrawing them. Cf. Jackson v. Thaler, 358 Fed. App'x 585, 568 (5th Cir. 2009) (in order to prevail on a claim that counsel was ineffective for failing to file a motion to suppress, the petitioner bears the burden of proving that the motion would have been granted); Mack v. Lynaugh, 754 F. Supp. 1116, 1124 (W.D. Tex. 1990) (absent a showing that there was a legal basis for filing a motion to suppress, an ineffective assistance claim based on counsel's failure to file such a motion fails).
[23] Rec. Doc. 3, p. 23.

plea offer.  <u>Frye</u>, 132 S. Ct. at 1409.  Second, he "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."  <u>Id</u>.

In the instant case, however, petitioner's claim fails for an even more fundamental reason: he has failed to meet his burden to prove the underlying factual predicate of his claim, i.e. that an uncommunicated plea offer was ever on the table.  For example, there is no affidavit from the prosecutor or defense counsel establishing the existence of such an offer.  On the contrary, the only "evidence" he offers in support of his claim is a letter to his lawyer from the prosecutor dated August 18, 2010, in which the prosecutor stated:

> I enjoyed talking to you this morning, and I will wait to hear from you tomorrow before amending the bill of information.  As I had mentioned earlier this month, if the case goes to trial, the bill will be amended to include charges for purse snatching as well as possession of stolen property, in particular the truck that your client used to allegedly pull over the victims.[24]

Petitioner interprets this letter as an indication that the prosecutor had offered a favorable plea bargain, musing, "Why would the ADA *'wait to hear from you tomorrow before amending the bill'* unless he was waiting to see if Mr. Ross would accept a deal?  …  [T]his letter makes it clear that a deal was offered of which he was never notified."[25]

However, the foregoing letter is at best unclear.  Perhaps it is as petitioner speculates; perhaps not.  But, again, such speculation does not suffice to meet his burden of proof.  Without some actual proof, such as an affidavit from his counsel, establishing that a plea bargain was in fact offered and was enforceable, there simply is no basis for this Court to find the state court's decision rejecting his claim was unreasonable.

---

[24] Rec. Doc. 3, p. 89
[25] Rec. Doc. 3, p. 36.

The undersigned is aware that petitioner blames his lack of evidence on the fact that he had no attorney to assist him in seeking post-conviction relief.  However, neither state law nor federal law holds that convicted prisoners seeking post-conviction relief in the state courts have a right to appointed counsel.  Although petitioner cites to <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), the United States Supreme Court expressly declined to address that issue in <u>Martinez</u>.[26]  In <u>Martinez</u>, the Supreme Court merely held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a *procedural default* will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Martinez</u>, 132 S. Ct. at 1320 (emphasis added).   <u>Martinez</u>, therefore, has no relevance in petitioner's case, because his ineffective assistance of counsel claim was denied by the state courts on the merits, *not* on the basis of a procedural default.  <u>Escamilla v. Stephens</u>, 749 F.3d 380, 394 (5th Cir. 2014) ("We conclude that <u>Martinez</u> does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted.").

Petitioner also complains that his lack of evidence stems from the fact that he was not afforded a post-conviction evidentiary hearing in the state courts.   However, Louisiana law expressly provides for summary disposition of post-conviction applications:   "If the court

---

[26] In <u>Martinez</u>, the Supreme Court stated:

> As <u>Coleman</u> [v. Thompson, 501 U.S. 722 (1991),] noted, this makes the initial-review collateral proceeding a prisoner's "one and only appeal" as to an ineffective-assistance claim, and this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings.
>     *This is not the case, however, to resolve whether that exception exists as a constitutional matter.*

<u>Martinez</u>, 132 S. Ct. at 1315 (citations omitted; emphasis added).

determines that the factual and legal issues can be resolved based upon the application and answer,

and supporting documents, including relevant transcripts, depositions, and other reliable

documents submitted by either party or available to the court, the court may grant or deny relief

without further proceedings."  La. Code Crim. P. art. 929(A).  Further, the state court's decision

on such matters is not reviewable in federal court.  As one court recently explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding.  In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A).  Federal courts "do not sit as a super state supreme court...."  Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law.  Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998).  Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254.  Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14,

2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action

No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

Lastly, the Court notes that petitioner is not entitled to a federal evidentiary hearing to

secure new and possibly stronger evidence in support of his claims.  On the contrary, the United

States Supreme Court has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review

16

is limited to the record in existence at that same time *i.e.,* the record before the state court.

This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.

Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted). And, again, Martinez did not alter that rule. Escamilla v. Stephens, 749 F.3d 380, 395 (5th Cir. 2014) ("[O]nce a claim is considered and denied on the merits by the state habeas court, Martinez is inapplicable, and may not function as an exception to Pinholster's rule that bars a federal habeas court from considering evidence not presented to the state habeas court.").

In summary, to be entitled to relief, petitioner must demonstrate that, based on the record as it existed before the state court, the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He clearly has not made that showing in the instant case. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by James David Ross be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this fifth day of July, 2016.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.